# Lefever *versus* Underwood.

*Partnership.—Bank Deposits by Partner must be in Firm Name and under control of Firm.*

1. A partner must keep partnership funds unmixed with his own, and equally within the grasp of the other partners; and in making deposits in bank, he must make them in the name of the partnership, to exempt him from responsibility therefor, in case of loss.

2. A deposit of partnership moneys in bank by a partner in his own name, is such an application of them to his own use, that if loss occur therefrom, by failure of the bank or otherwise, he alone must bear it.

3. Where one partner mixed partnership funds with his own, made deposits of them in bank in his own name, appropriated them to his own use, assuming the absolute and entire control, and the bank becoming insolvent, received its notes, and had them registered in his own name, without the consent or knowledge of his copartner, by reason whereof the partnership funds were lost, such partner is responsible to the copartner for his share of the fund, and must bear the loss alone.

APPEAL from the Common Pleas of *Chester county.*

This was a proceeding in equity on a bill filed February 3d 1858, by George W. Lefever against Jeremiah Underwood and David Wright, to compel a settlement of partnership accounts.

The bill charged, that on or about the 1st day of August, A. D. 1856, the complainant and defendants entered into partnership as dealers in stock, cattle, and sheep, the complainant and Underwood each bringing into the firm $4500, and Wright

[Lefever *v.* Underwood.]

bringing in no capital, but agreeing to give his services in taking care of the said cattle and sheep and selling them; that each partner was to have one-third of the profits; that the partnership continued till about January 1st 1857, when it was dissolved; that during the partnership, cattle and sheep were bought and sold, to an amount more than $40,000; that no settlement has been made between the partners; that complainant has paid large sums of money in respect of partnership debts, and that a considerable balance is due him from each defendant.

Underwood, by his answer, denied the existence of a partnership between himself, Lefever, and Wright, at any time or in any business; and alleged, that about August 11th 1856, he paid to Lefever upon his request and offer $4500, to be laid out in cattle by Lefever and to be repaid to Underwood on the 1st of October, then next, he, Underwood to have one-half of the profits on the cattle; that he assisted in selling and taking care of cattle alleged by Lefever to have been purchased with his money; that in a short time all the cattle he had interest in were sold, and, that since, he has had no interest in any cattle, &c., with Lefever; that he made further advances to the amount of $685 to Lefever, to assist him in paying for other cattle, &c., with other allegations not important—denying knowledge of any investment by Lefever, of debts paid by him, or that there is a balance due from Underwood to Lefever; but claiming that there is a balance of not less than $5000 due from Lefever to Underwood.

Wright's answer is omitted, as no question was presented as to the partnership between him and complainant.

The case was referred to P. Frazer Smith, Esq., as master, whose report disclosed the facts which are contained in the opinion of this court.

The main point in the cause was, whether Lefever, one of the partners by whom and in whose name the purchases and sales, the giving and receiving of notes, and the transactions in the bank, and the receipt and investment of the capital, &c., of the firm were done; who, before and during the existence of the partnership, had kept a deposit account in bank, in his own name and exclusively under his control; and who, during the continuance of the partnership, had deposited the money and notes of the firm in bank in his own individual name, mingling it with his private funds, and funds belonging to other business transactions; could, on the failure of the bank, throw the loss or any portion of it on his copartners.

The master, on a careful examination, and citation of facts and authorities, decided this question in the negative, and stated an account between the parties in accordance with his decision.

Exceptions were filed to the decision and report of the master,

[Lefever v. Underwood.]

but the court below, on hearing, dismissed them and confirmed the report.

The case was thereupon removed into this court by Lefever, who assigned for error the decree of the Common Pleas confirming the report of the master.

*William Darlington* and *William B. Waddell,* for appellant.— That a partnership, in the business of dealing in cattle, between Lefever and Underwood existed, admits of no dispute. The terms, amount of capital put in by each, and duration of the partnership, were left to rest in parol.

It does not appear that there was any agreement as to what should be the firm name, but the whole business of buying and selling cattle, as well as the transactions in bank, was done in the name of George W. Lefever. All the purchases were made in his name, and when sales were effected, if notes were given by the purchasers, they were made payable in his name, or if in the name of Underwood, they were endorsed by him and handed over to Lefever. When he purchased cattle for the firm, he gave a note for the money in his own name, and when it became due he met it at bank by money and notes received from the sales and discounted for the purpose.

When they commenced business together, Underwood handed over his capital, $4500, to Lefever, "to invest in cattle, which Underwood will have an equal share in." When the note to Glendy was to be met, Underwood furnished part of the funds "to help pay Glendy's note," and his blank note upon which to raise other funds for the same purpose. They were in business together from August 1st 1856 till January 1st 1857. During all that time Underwood knew *he* had purchased no cattle for the firm, nor given any notes, and that Lefever handled all the notes and cash. He was aware that the business was done at the Lancaster Bank, for he went there to inquire about the account of Lefever, and said he had an interest in it. Under these circumstances, in the absence of any agreement as to the *name* of the *firm* in which the business should be done, the name in which it *was done* shall be taken to be the firm name. The presumption that the partners knew the name in which the business was done is irresistible. If Underwood had any objection to that name, it was open to him to object, and he might at any time have controlled it. Not making any objection, he is now concluded from asserting the contrary. Nor will his calling at the bank, and speaking first about the account of George W. Lefever & Co., affect this conclusion, for that was after the loss was apprehended or known, and his interest was to put a different face on it. In all their collections, the money and notes were handed over to Lefever. Underwood knew that they were to be applied to pay

[Lefever *v.* Underwood.]

debts they owed for cattle, and as many of the transactions were necessarily through the Lancaster Bank, and as there is no proof that Underwood's name was ever required to any check or other paper, it is impossible that he could be ignorant that the business was all done in the name of Lefever. The presumption of knowledge on his part is, therefore, conclusive, and the presumption of law is, that George W. Lefever was the firm name of the partners. It is also clear that the funds placed in the Lancaster Bank to meet the firm note to Glendy, were partnership funds. The master reports that the money and notes received from the sales of cattle were deposited in that bank, and as the cattle belonged to the firm, so did these funds. It is clear also that there was a loss of $7905 on Lancaster Bank notes, owing to the failure of the bank. Must this loss be borne by Lefever alone, or must the partners share it? The master treats it as a case of trust, and applies the same rules and tests to the conduct of partners that are applicable to trustees. This is entirely too broad a statement of the principle. It is true that trustees, partners, and agents are alike bound to fidelity, and neither will be allowed to create an interest in himself in opposition to the interest of the beneficiary, partner, or principal, and in reference to these cases the same rules and tests are applied to all. This is the whole extent of the authorities relied on by the master. To say that a partner is a trustee, or is in general to be treated as such, is novel. He is the *agent merely* of his fellow, and bound to fidelity as any other agent. No such rule as, from motives of public policy, courts have adopted in dealing with trustees, in the management of trust funds, has ever been applied to partners. The power of a partner is limited only by the nature of his business. He may deal, buy, sell, sue, compound debts, and do many other things not within the scope of the power of a trustee. He is answerable to his fellow for misconduct, and gross negligence in the management of the firm business, but he is not answerable for a disastrous exercise of his discretion. It is then here a question of good faith. Did Lefever do what he deemed right in the management of the firm business at the Lancaster Bank? There is no allegation that he did not, but, on the contrary, all the proof shows he did the best he could. He had every motive of interest to save all he could for his partner and himself, and he had the advice of counsel in his final efforts to obtain the money from the bank. It would be inequitable to cast the whole loss upon him, upon what is at best but a technicality. It should be shared by both.

*Joseph J. Lewis*, for appellee.——The appellant's position that a partner may, without the knowledge of his copartner, deposit moneys in bank in his own name, mingle them with his own

[Lefever v. Underwood.]

funds, and funds belonging to other business transactions, use them as his own, keep them out of the reach of his copartner, and in case of the bank becoming insolvent, slip the loss off his own shoulders, and throw it upon the partnership, is not maintainable on any principle of law, equity, or ordinary fair dealing.

The master says, that "the same rules and tests are applied to the conduct of partners as are applicable to trustees," and the position is sustained by a full reference to the best authorities: Story on Part., § 169; Collyer on Part. 182; 1 Story's Eq., §§ 322–23, 465; Sheriff v. Wilks, 1 East 48; 2 Story's Eq. 1269, 1270; Wren v. Kirton, 11 Ves. 377; Myers v. Entriken, 6 W. & S. 46; Kelley v. Greenleaf, 3 Story C. C. 92–105; Stoughton v. Lynch, 1 John Ch. 470; Morris v. Wallace, 3 Barr 323; Jackson v. U. S. Bank, 10 Id. 68; Commonwealth v. McAllister, 4 Casey 480, 6 Id. 536; Thompson's Appeal, 10 Harris 16.

The question then comes to this—is a deposit of money with a banker, in the depositor's own name, an application of it to his use? On this point there is no room for hesitation, or doubt: Rocke v. Hart, 11 Ves. 61; Sutton v. Sharp, 1 Rus. 151; Wren v. Kirton, 11 Ves. 381; Massey v. Banner, 4 Madd. 418; Milland v. Gray, 2 Collyer 300; Jackson v. Bank of United States, 10 Barr 69; Commonwealth v. McAllister, 4 Casey 484, 6 Casey 537; Jenny's Eq. 140; Ex parte Hilliard, 1 Ves. Jr. 60; Ex parte Forenshend, 15 Ves. 470.

It is plain as a legal principle, that the deposit of money by Lefever in his own name, in the Lancaster Bank, made it his. It was subject to attachment by his creditors: Jackson v. Bank of United States. If he had assigned his property generally for the benefit of his creditors, it would have passed to his assignees: Thompson's Appeal. If he had died, it would have gone to his executors.

How could he, indeed, after asserting by the manner of the deposit, that the funds belonged to him, allege in his own favour and for his own advantage, that they belonged to the partnership? Is he to be permitted to claim them as his own, in fair weather, and throw them overboard, as his partners, in foul? He is estopped by his own act, from making them partnership estate: McAllister v. Commonwealth, 6 Casey 538.

But it is argued as an inference of fact, that "George W. Lefever" was the firm name of the partners. The inference is, in direct opposition to the fact, found and reported by the master.

The two facts, indeed, which the appellant wishes to establish by presumption; 1st, that George W. Lefever was the firm name of the partners, and that Underwood knew that all the business was done in Lefever's name, are expressly and pointedly negatived by the master; and, as it was the duty of the master to draw all conclusions of fact relevant to to the subject before him

[Lefever *v.* Underwood.]

(3 Daniel's Ch. Pr. 937), the appellant's hypothesis, upon which he has built his argument, fails him wholly.

It is clear—1. That a partner, in the management of partnership funds, is subject to like duties and responsibilities as a trustee, and is governed substantially by the same rules.

2. That a partner, like a trustee, is not permitted to put the funds of the partnership in a position in which he may have advantage to himself, if advantage accrues, and make others share the loss with him, if loss should happen.

3. That a partner must keep the funds of the partnership unmixed with his own, and equally within the grasp of all the partners, and, that in making deposits, if he wishes to be exempt from responsibility for loss, he must make them in the name of the partnership.

4. That a deposit of partnership moneys in bank by a partner, in his own name, is an application of them to his own use, and he is not permitted in such case to aver, if loss occurs, that the loss is other than his own.

5. That Lefever, as partner of Underwood, did mix the partnership funds with his own; did make deposits of them in bank in his own name; did appropriate them to his own use; did designedly assume the absolute and entire control of them; did make assignments in respect to them with an insolvent bank, without consulting his associates in business, or calling upon them or either of them, to take any part in the arrangements; and did settle with one of those associates, and state an account on his own book with another, without mention of the bank loss; and it follows, that the report of the master and the decree of the court below, were the proper result of the law and the facts.

The opinion of the court was delivered, February 10th 1862, by

Read, J.—A partnership was entered into in August 1856, between George W. Lefever, a drover, and Jeremiah Underwood, a farmer, of Chester county, in the buying and selling of cattle, which lasted between four and five months. Each contributed $4500, and each was to receive an equal share of the profits. By a statement entered in G. W. Lefever's book, of an account with J. Underwood, it appears that their business closed with a profit. Half of the profits and the cash actually put in by Underwood, about which there was no dispute, with interest from 1st April 1857, formed the basis of the master's report, and of the decree of the court below. Lefever had claimed to charge Underwood with certain losses occasioned by the failure of the Lancaster Bank, which was clearly negatived by the master, and is the ground of appeal to this court.

Mr. Lefever bought and sold the cattle, occasionally assisted in the selling by Underwood, but in every instance the purchases

[Lefever v. Underwood.]

were consummated by Lefever. The payments for cattle sold were made both in money and promissory notes—the notes were made payable to Lefever, except once or twice to Underwood, but all were received by Lefever, and the payments for cattle were made by him. For a long time before, as well as during his connection with Underwood, Lefever had a large deposit account in the Lancaster Bank, which was exclusively in his own name, and he would never permit any one with whom he was connected in business to have control of his account or of his name in bank, nor would he have any partner in his bank account. The money and notes received by him from the sales of their cattle were deposited by him in the Lancaster Bank in his individual name, and mingled with his private funds and funds belonging to other business transactions. Until after the failure of the bank, Underwood had no knowledge that the account was thus kept, and by reason of its being so kept, was in fact prevented on his application to the bank from ascertaining how it stood.

After the conclusion of the business connection with Lefever, Underwood demanded at the Lancaster Bank to see the account of G. W. Lefever & Co. On being informed that there was no such account, but that there was an account in the name of George W. Lefever, he asked for a copy of it, which being refused, because it was the individual account of Lefever, he asserted his right to it, because he and Lefever were doing business together, and he had an interest in it, and the master finds that Underwood knew nothing about it, but on the contrary supposed that the money was deposited to the credit of the firm, and it is equally clear that the bank and Lefever both regarded it simply as his individual account, and not the account of the firm at all. There was not only no account, but Lefever never intended there should be any to show what was partnership and what were private or other funds, but that all should be regarded as his own exclusive property. All the notes were signed by Lefever alone given for cattle, and all the checks were drawn by him in his individual name. All the funds of the concern, from the time they passed into the hands of Lefever, were designedly kept within his exclusive control.

The Lancaster Bank finally closed its doors on the 17th November 1856; on the 24th November, Lefever drew out of the bank, in its notes, $13,500, upon his own check payable to self, leaving to his credit a balance of $200 or $300, which was applied to the payment of a protested note at the bank with which Underwood had no connection. Part of the notes thus drawn out were afterwards redeemed in par funds, leaving in his hands $7905 of Lancaster Bank notes, which were registered by the bank for the purpose of drawing interest—endorsed by the cashier in three

[Lefever *v.* Underwood.]

packages, and the packages appropriately endorsed. These packages, the master finds, "are in the possession of Lefever, produced by him as part of his case, and have been under his exclusive control since they were delivered to him." At the time of the failure of the bank, the notes could have been sold at 80 per cent., and have gradually decreased in value till they are now scarcely of any value.

About the time that these things were thus going on, Lefever, individually, with his counsel, had several interviews with the directors of the bank, and made the arrangement with them by which part of the notes was redeemed. "Underwood," as the finds master, "had nothing to do with these arrangements, and was not called upon to take any part in them; everything about them was conducted by Lefever alone, on his own responsibility, without consulting Underwood at all."

Now this, the only loss made by Lefever, was $7905. If the notes had been sold at 80 per cent., the loss would only have been $1581, of which Underwood's share could only have been $790.50; and if any part of the loss was to be paid by Underwood, was he not entitled to be informed and consulted by his partner?

Without entering into the elaborate reasoning of the master, it is clear that Lefever treated the account with the bank as his own individual account, and that it was so regarded by the bank; that all his arrangements with it were in the same spirit, and that the most unwise and imprudent retention of the notes by him without even consulting or informing Underwood, was his own individual act; and that under the circumstances, having deprived the transaction of any partnership character, he must sustain the whole of this loss himself.

Decree affirmed at the costs of the appellant.